IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUIS CABRERA FLORES,**<br><br>Plaintiff,<br><br>v.,<br><br>**AT&T MOBILITY OF PUERTO RICO INC./LIBERTY COMMUNICATIONS OF PUERTO RICO, LLC,**<br><br>Defendant. | CIVIL NO.<br><br>RACE DISCRIMINATION, RETALIATION, UNLAWFUL DISCHARGE, SUPPLEMENTAL STATE CLAIMS; JURY TRIAL DEMANDED |

## COMPLAINT

**TO THE HONORABLE COURT:**

**NOW COMES** the Plaintiff, Luis Cabrera Flores, through the undersigned attorney and respectfully states, alleges and prays as follows:

### I. JURISDICTION AND VENUE

1. On September 30, 2020, Plaintiff filed his claim with the Equal Employment Opportunity Commission (EEOC).

2. On August 3, 2021, the EEOC concluded the following:

> Having reviewed and examined the evidence, the Commission determines that there is reason to believe the Respondent subjected the Charging Party to a disciplinary work suspension and terminated his employment on 10/8/2020 in retaliation for participating in protected activity under Title VII. Furthermore, the investigation revealed that the Respondent failed to make immediate, appropriate action and allowed Charging Party to be harassed by a co-worker due to his Race (Black), including constantly calling him "Damn Nigger" and "Nigger" and also subjected him to national original (accent) harassing conduct. The investigation revealed that

1

contrary to respondent's own policy, the respondent failed to conduct a fair investigation into a work related incident on 9/8/2020 caused by the co-worker resulting in Charging Party's unfair work suspension and ultimate unjust employment termination. Also, the investigation disclosed that to this date, the retaliation continues.

3. Since no agreement was reached, the EEOC issued the Notice of Right to Sue on August 27, 2021.

4. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981.

5. Supplemental jurisdiction also exists pursuant to 28 U.S.C. § 1367(a) to entertain Plaintiff's Commonwealth law claims because this claim arose from the same nucleus of operative facts.

6. Venue is founded upon 28 U.S.C. § 1331, and 1367 and the aforementioned statutory and constitutional provisions.

## II. REQUEST FOR JURY TRIAL

7. Plaintiff requests trial by Jury.

## III. PARTIES

8. Plaintiff Luis Cabrera Flores is of legal age, single, resident of Puerto Rico, with the following address: 50 Calle Higuerillos, Apt 106, Urb Rio Hondo 3 Bayamon, PR 00961.

9. Defendant AT&T Mobility of Puerto Rico Inc/Liberty Communications of Puerto Rico, LLC., is a corporation dully registered under the laws of the Commonwealth of Puerto Rico, with designated office address in: 252 Ponce de León Ave., Floor 20 San Juan, P.R. 00918.

**IV. STATEMENT OF CLAIMS**

10. Plaintiff was born in the Virgin Islands and is black from Afro-Virgin Islander descent.

11. Plaintiff was adopted by Puerto Rican parents at age 10.

12. Plaintiff started working for Defendant on July 25, 2016.

13. Plaintiff worked at the BUS Customer Service & Collections Department as a Business CS Specialist 1-S.

14. Plaintiff's work location was AT&T, Plaza San Roberto 966, San Juan, Puerto Rico.

15. Plaintiff's base salary was $40,517.00 per year.

16. On June 2020, Plaintiff was relocated to another area at the BUS Customer Service & Collections Department.

17. Plaintiff begun to work in same area with Ms. Christie Rivera.

18. As soon as Plaintiff started to work with Ms. Rivera, he was subjected to race and national origin epithets and discriminatory remarks by her.

19. Ms. Rivera has white skin and/or is Caucasian.

20. Plaintiff's first language is English and he has a marked accent while attempting to speak in Spanish.

21. Ms. Rivera constantly attacked Plaintiff by telling him "canto e negro" ("Damn Nigger"), negro ("nigger"), negro cabrón ("dumbass nigger") and other offensive and discriminatory words, among others.

22. Ms. Rivera harassed Plaintiff and made comments and jokes about Plaintiff's Virgin Islander origin accent.

23. Mr. Rivera constantly told Plaintiff to go back to your island, in reference to Plaintiff's Virgin Island origin and she also harassed, joked and mocked him with his accent; all of which was reported to superiors.

24. Ms. Rivera insulted Plaintiff constantly because he was black and from the Virgin Islands saying that he was not Puerto Rican.

25. Ms. Rivera made offensive sexual and discriminatory comments towards Plaintiff by asking him if he had big penis because he is black. ("Si eres negro lo tienes que tener grande" "Los negros la tienen grande, tú también?").

26. Ms. Rivera also made, what she considered to be, jokes about Plaintiff's skin color when he was talking with other co-workers.

27. Most of the time when Ms. Rivera saw Plaintiff, she made disgusted faces in dislike of Plaintiff's skin color.

28. The pattern of racism and discriminatory remarks made by Ms. Rivera and the hostile work environment were constant and usually on a daily basis until Plaintiff was unlawfully discharged.

29. Plaintiff felt humiliated, harassed, frustrated and depressed by Ms. Rivera's actions and conduct.

30. Ms. Rivera's behavior against Plaintiff caused him anxiety and affected his emotional state.

31. Ms. Rivera treated Plaintiff as useless human being, even commenting that people like him are usually killed.

32. Plaintiff notified his supervisors and/or managers, of the discriminatory, racism and hostile actions by Ms. Rivera.

33. Plaintiff also notified his direct supervisor Ms. Myriam Marzán, of the discriminatory, racism and hostile actions by Ms. Rivera.

34. Despite Plaintiff notifying Ms. Marzán of Ms. Rivera's discriminatory conduct against him, Ms. Marzán did not report the incidents nor alerted other superiors in order to conduct an investigation, as per Defendant's own policies.

35. The ongoing racist and discriminatory attacks by Ms. Rivera continued escalating until a physical altercation took place on September 8, 2020 between Ms. Rivera and Plaintiff.

36. On the aforementioned date, Plaintiff began his work shift at noon.

37. Almost instantly, Ms. Rivera began with the usual illegal discriminatory pattern against Plaintiff by making use of profane, racist and discriminatory language against him such like "Canto e negro" ("Damn Nigger"), negro ("nigger"), go back to your island.

38. When Plaintiff took his lunch break at 4:45pm, he asked his coworker Ms. Karla Santiago if she wanted to go get coffee with him.

39. Ms. Santiago told Plaintiff that Ms. Rivera was heading to a bakery nearby, and that she had already asked Ms. Rivera to get a coffee for her.

40. Ms. Santiago then told Plaintiff to ask Ms. Rivera for a coffee too.

41. Plaintiff was worried to ask Ms. Rivera for coffee because of her hostile attitude and behavior against him, but nonetheless sent Ms. Rivera a

5

text message asking her to do the favor of buying him a coffee.

42. Ms. Rivera replied the text message saying no.

43. After receiving the text message Plaintiff decided to go to a nearby Starbucks coffee shop with coworker Ms. Santiago.

44. As they were heading to the Starbucks coffee shop, Ms. Santiago received a phone call from Ms. Rivera, telling her that she would buy coffee for both of them, Ms. Santiago and Plaintiff.

45. When Ms. Rivera arrived to the office, she began to tell Plaintiff with a very loud voice: "I just bought your coffee to spill it on you!".

46. Later that day, while on his break, Plaintiff went to Ms. Santiago's desk to chat with her.

47. Ms. Rivera began to yell: "vete para allá canto de negro, no te quiero aquí fucking negro" ("go away you damn nigger, I don't want you here fucking nigger").

48. Plaintiff replied to Ms. Rivera's comments by saying that Ms. Santiago was his friend and that he had the right to talk with her.

49. Then, all of sudden, Ms. Rivera got up from her desk and started hitting Plaintiff with an orange box.

50. Plaintiff started running around the office and requested his manager, Ms. Marzán, to stop Ms. Rivera from attacking him, but she refused to do so arguing that she was not Mrs. Rivera's supervisor, instead she watched.

51. Plaintiff went to the bathroom and when he got out of the bathroom, Ms. Rivera began to threaten him, saying that she was going to throw water at him if he did not leave Ms. Santiago's desk.

52. Despite providing notice to Ms. Marzán, she refused to intervene and ignored the situation.

53. The harassment and the threats made by Ms. Rivera of throwing water to Plaintiff continued.

54. Plaintiff continued to ask his supervisor for help.

55. Ms. Marzán continued to ignore him and replied that Ms. Rivera was not part of her team.

56. Plaintiff decided to go back to his work desk, when all of the sudden Ms. Rivera threw water at him and then hit Plaintiff.

57. Team Leader, Mr. Gilberto Campoamor, intervened and held Ms. Rivera to stop her from hitting Plaintiff.

58. Ms. Rivera continued with her attacks by yelling that she would destroy Plaintiff's life and by using obscene words against him.

59. After this incident, on September 29, 2020, Defendant suspended Plaintiff indefinitely without pay.

60. On September 30, 2020, Plaintiff filed a Charge of Discrimination in the Puerto Rico Department of Labor Antidiscrimination Unit and the EEOC, Case No. 515-2020-00383, against Defendant, regarding the discriminatory actions and the harassment that took place in his employment and the omissions or lack of remedial actions taken by Defendant.

61. On October 8, 2020, Defendant, in retaliation, discharged Plaintiff from his employment alleging that Plaintiff violated their Conduct Policy.

62. Plaintiff was the victim of discrimination and harassment by Ms. Rivera that resulted in the altercation caused by her.

63. Plaintiff complained to his immediate supervisor Ms. Marzán of Ms. Rivera's conduct multiples times, but she never took any effective remedial action and she refused to escalate the situation for further investigation.

64. Defendant failed to conduct a fair investigation of the incident that led to Plaintiff's unfair work suspension and ultimate unjust employment termination.

65. On July 14, 2021, Plaintiff amended his Charge of Discrimination to include a claim for retaliation.

66. On August 3, 2021, the EEOC issued a Letter of Determination finding there is reason to believe that the violations occurred.

67. On August 27, 2021 the EEOC issued a Notice of Right to sue.

## V. DAMAGES

68. As a result of the events described herein, Plaintiff had suffered and continues to suffer several damages, included but not limited to economical and emotional damages.

69. In view of the chain of events described in this Complaint, Plaintiff had high blood pressure, anxiety, nervous breakdowns, and stress due to defendant's discrimination and relation. Plaintiff also suffered the following damages: humiliation, low self-steem, headaches, severe depression, a sense

of despair and helplessness, a lack of interest in life and daily activities, insomnia and other sleep disturbances such as nightmares, her tranquility has been seriously affected, suffered economic losses, all of which affected her daily activities, including her family life, emotional damages, anxiety attacks and panic attacks; among others.

70. Plaintiff also suffered physical pain and minimized as a man.

71. Plaintiff's unjust and lawful discharge has been an economic hardship to him. Plaintiff has not been able to find steady job, resulting in failure to comply with his economic obligations.

72. Plaintiff's damages herein alleged apply to all causes of actions.

### VI. FIRST CAUSE OF ACTION: RACE AND NATIONAL ORIGIN DISCRIMINATION UNDER TITLE VII,  OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000E, ET. Seq AND 42 U.S.C. § 1981

73. The allegations contained in all previous paragraphs are re-alleged herein.

74. Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

75. 42 U.S.C. § 1981 prohibits race and national origin discrimination in the making and enforcing of contracts.

76. Plaintiff is black from Afro-Virgin Islander descent which first language is English and his Spanish has a different accent from Puertorricans.

9

77. Plaintiff was subjected of race and national origin epithets, discrimination and harassment by co-worker Ms. Christie Rivera who is white or Caucasian and speaks Spanish.

78. Ms. Rivera constantly attacked Plaintiff by telling him "Canto e negro" ("Damn Nigger") negro cabrón ("dumbass nigger"), she mocked, laughed and joked about his accent and other offensive and discriminatory words and other offensive and discriminatory words.

79. Ms. Rivera also harassed Plaintiff with his Virgin Islander origin accent.

80. Plaintiff felt humiliated and harassed by Ms. Rivera's actions and conduct.

81. Plaintiff notified his supervisor and/or manager Ms. Myriam Marzán of the discriminatory actions by Ms. Rivera.

82. Ms. Marzán did not report the incidents or reported them to her superiors in order to conduct an investigation.

83. The ongoing discriminatory attacks by Ms. Rivera continued escalating until a physical altercation took place on September 8, 2020.

84. As a result of the above-mentioned incident Plaintiff was suspended and ultimately discharged from his employment.

85. Plaintiff was the victim of discrimination and harassment by Ms. Rivera that resulted in the altercation caused by her.

86. Defendant discharged Plaintiff from his employment position.

87. Plaintiff complained to his immediate supervisor Ms. Marzán of Ms. Rivera's conduct multiples times, but she never took any effective remedial action and did not escalate the situation for a further investigation.

88. Defendant failed to conduct a fair investigation of the discriminatory actions against Plaintiff and of the incident that led to the unfair work suspension and ultimate unjust employment termination.

89. As a result of Defendant's acts and/or omissions in violation of Title VII and Section 1981, and the damages that have resulted from said actions, Plaintiff is entitled to back pay, related benefits and interests and a compensation for the damages, thereon estimated in the amount of not less than $1,000,000.00.

### VII. SECOND CAUSE OF ACTION: RACE AND NATIONAL ORIGIN DISCRIMINATION UNDER LAW 100, PUERTO RICO'S GENERAL EMPLOYMENT DISCRIMINATION ACT

90. The allegations contained in all previous paragraphs are re-alleged herein.

91. Law 100 is Puerto Rico's general employment discrimination statute that bans employment discrimination on the basis of race. P.R. Laws Ann. tit. 29, § 146.

92. As a result of the above-mentioned set of facts regarding the discriminatory action that Plaintiff suffered, he is also entitled to compensation under Law 100.

93. Therefore, for the discriminatory actions and the discriminatory discharge of Plaintiff's employment, and the damages that have resulted from

11

said actions, Plaintiff is entitled to an amount not less than $1,000,000.00 under Puerto Rico Law 100.

### VIII. THIRD CAUSE OF ACTION: RETALIATION UNDER TITLE VII'S ANTI-RETALIATION PROVISION, 42 U.S.C. § 2000E-3(A)

94. The allegations contained in all previous paragraphs are re-alleged herein.

95. "Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), states that it is unlawful for an employer to discriminate against an employee because he has opposed any practice made an unlawful employment practice ..., or because he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing.'"

96. Plaintiff had been subject of race epithets and discriminatory actions by co-worker Ms. Christie Rivera. Said was notified to their supervisor and/or management and failed to do anything to protect him.

97. After internally complaining, on September 29, 2020, Defendant suspended Plaintiff indefinitely without pay, for an incident where he was a victim of discriminatory actions and harassment by coworker Ms. Christie Rivera, as described above.

98. On September 30, 2020, Plaintiff filed the abovementioned charge before the EEOC.

99. In retaliation for filing said charge, on October 8, 2020, Defendant discharged Plaintiff from his employment alleging that he violated their Conduct Policy.

100. As a direct and proximate cause of Defendant's aforementioned conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional (as previously described) and economic damages.

101. As a result of Defendant's retaliation against Plaintiff and the damages that have resulted from said conduct, Plaintiff is entitled to a compensation estimated in not less than $2,000,000.00.

### IX. FOURTH CAUSE OF ACTION: RETALIATION UNDER PUERTO RICO LAW 115

102. Law 115, 29 LPRA § 194 et seq, protects employees that collaborate in investigations or offer testimony before an administrative, judicial or legislative forum, from adverse actions by their employers.

103. As a result of the above-mentioned set of facts regarding Defandant's retaliation against Plaintiff, he is also entitled for compensation under Puerto Rico Law 115.

104. Therefore, for the retaliation and unjust discharge from his employment and the damages that have resulted from said actions, Plaintiff is entitled to an amount not less than $1,000,000.00 under Puerto Rico Law 115.

### X. FIFTH CAUSE OF ACTION: LAW 80, 29 L.P.R.A. § 185A ET SEQ

105. The allegations contained in all previous paragraphs are realleged as if fully alleged herein.

106. In the alternative, if Plaintiff fails to prove that his unlawful discharge was not discriminatory or in retaliation, Puerto Rico Law 80 of May 30, 1976, as amended, establishes an indemnity payment to employees who are discharged from their employment without just cause.

107. Defendant's adverse employment action against the Plaintiff constitutes a discharge without just cause.

108. As a direct and proximate cause of Defendant's aforementioned conduct, Plaintiff is entitled, in addition to the salaries he would have earned, to an indemnification pursuant to Puerto Rico Law 80.

109. Plaintiff's best salary from the past three years previous to his discharge was $40,412.00.

110. Plaintiff worked for Defendant for 4 years.

111. Plaintiff is entitled to compensation not less than $10,006.34.

## XI. RELIEF

112. Wherefore, Plaintiff prays this Honorable Court enter judgment in favor of Plaintiff and against Defendants and issue the following remedies:

   a. Under Title VII and 42 USC 1981, Plaintiff is entitled to an amount not less than $3,000,000.00, for the discriminatory actions and the retaliation against him.

   b. Under Puerto Rico Law 100, Plaintiff is entitled to an amount not less than $1,000,000.00, for Defendant's discriminatory actions.

   c. Under Law 115, Plaintiff is entitled to an amount not less than $1,000,000.00 for Defendant's retaliation actions.

   d. Under Law 80 (in the alternative), Plaintiff is entitled to an amount not less than $10,006.34.

113. Plaintiff must be awarded with costs, expenses, interests, punitive damages, attorney's fees, plus any and all remedies, both in law or equity, to

which Plaintiff has a right and this Court deems appropriate, regardless of whether they were claimed or prayed for in this Complaint.

114. Grant plaintiff such other and further relief as the Court may deem appropriate and proper and retain jurisdiction over this action in order to assure full compliance with any decree issued by this court.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this November 23, 2021.

**BELLVER ESPINOSA LAW FIRM**
Condominio El Centro I, Suite 801
500 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Tel./Fax: (787) 946-5268

S/Alejandro Bellver Espinosa
Alejandro Bellver Espinosa, Esq.
U.S.D.C. – P.R. 225708
Email: alejandro@bellverlaw.com